Filed 11/22/23  In re X.E. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re X.E., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E081896 |
| Plaintiff and Respondent, | (Super.Ct.No. J291427) |
| v. | OPINION |
| A.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Conditionally reversed and remanded with directions.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant A.C. (mother) appeals the termination of parental rights to her daughter X.E. (the child) and argues respondent San Bernardino County Children and Family Services (the agency) failed to comply with California law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) by not asking available extended family members about the child's possible Indian ancestry.[1] The agency argues it satisfied its duty of inquiry, and that any error was harmless. We conditionally reverse and remand with directions.

## II.  PROCEDURAL BACKGROUND AND FACTS[2]

In November 2021, the day after mother gave birth to the child and both tested positive for amphetamines, a social worker spoke with mother and the maternal grandmother, both of whom denied knowledge of any known Indian ancestry. Subsequently, the agency obtained a juvenile detention warrant for the child and initiated this dependency pursuant to Welfare and Institutions Code[3] section 300, subdivisions (b)(1) and (g).  Among other allegations, the petition included that mother has substance abuse issues that negatively impact her ability to adequately parent the child.  On December 1, mother completed and filed a Judicial Council Forms, form ICWA-020,

---

[1] Because ICWA uses the term "Indian," we will do the same for consistency, even though we recognize that "other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] We focus on those facts relevant to the ICWA issue raised on appeal.

[3] All further statutory citations are to the Welfare and Institutions Code.

parental notification of Indian status, indicating she has no Indian ancestry as far as she knows. She provided only the maternal grandmother's contact information on the family find and ICWA inquiry form.

At the detention hearing, mother identified D.E. (who was incarcerated) as the biological father and again denied having any Indian ancestry. The maternal grandmother was also present and she denied having any Indian ancestry. The juvenile court ordered D.E. to fill out an ICWA-020 form. The child was detained and reunification services were ordered for mother.

According to the jurisdiction/disposition report, the social worker again asked about, and mother again denied, any Indian ancestry. Mother stated the maternal grandparents are divorced but live in Yucaipa. The social worker was unable to interview D.E., and the child remained hospitalized. In February 2022, the agency informed the court that the child was placed in a confidential foster home while mother continued to receive inpatient services to address her substance abuse issues. In a phone interview with D.E., he acknowledged paternity and "denied ICWA." On May 4, 2022, the maternal grandmother once more denied Indian ancestry. By August 23, mother had not visited the child for months, had not contacted the agency, and was not drug testing. The social worker described mother's prognosis as "poor given the lack of communication and visitation."

At the contested jurisdiction/disposition hearing (which had been continued several times), the juvenile court declared the child a dependent of the court, removed her from mother's physical custody, found D.E. to be an alleged father, and ordered

3

reunification services and supervised visitation for mother. The court found ICWA was inapplicable and authorized DNA testing with a paternal relative. On October 19, 2022, the agency informed the court that D.E. is the biological father of the child.

On March 2, 2023, the juvenile court terminated mother's reunification services and set a section 366.26 hearing. In the section 366.26 report, the agency provided a list of its ICWA inquiries, and noted that mother, father, maternal grandmother, and paternal grandfather denied any Indian ancestry. On August 3, 2023, the agency again made an ICWA inquiry of the maternal grandmother and obtained the name of a maternal uncle, J.C.

On August 9, 2023, the agency called the social worker to testify as to "her efforts to reach a couple relatives regarding ICWA." The maternal grandmother testified that she was not aware of the maternal grandfather having any Indian ancestry, and she did not have any such ancestry. She stated that she has five brothers and none have American Indian heritage; however, mother's younger brother (a half sibling) is from the Pima Maricopa tribe. The maternal grandmother did not inform the agency about the maternal uncle's ancestry because he and mother have different fathers. After finding ICWA does not apply, the juvenile court terminated parental rights.

## II. DISCUSSION

Mother faults the agency for failing to make an ICWA inquiry of—let alone identify and locate—the family members mentioned by the maternal grandmother at the section 366.26 hearing. She asserts that if the agency "did in fact conduct appropriate inquiries pursuant to the ICWA, [it] failed to report those efforts." The agency argues it

4

satisfied its duty of inquiry and, regardless, any alleged failure to inquire of these relatives should be considered harmless error. We are not persuaded by the agency's argument.

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes. (See §§ 224-224.6; [citation].) An Indian child is any unmarried person under 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); see § 224.1, subd. (b).)

"'Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.' [Citation.] [The agency] and the juvenile court have an 'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.' (§ 224.2, subd. (a).) The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. [Citation.] ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); § 224.3, subd. (a).) Notice enables the tribes 'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' [Citation.]

"The duty of initial inquiry applies in every dependency proceeding. [Citation.] Federal regulations require state courts to ask each participant 'at the commencement' of

5

a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).) In addition, when [the agency] takes a child into temporary custody, the agency must ask 'the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child,' and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) *Extended family members* include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678-679, italics added (*Ricky R.*).)

"When [the agency] fails to comply with the duty of initial inquiry under state law, we will find the error to be prejudicial and conditionally reverse if 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679.)

In this case, the agency failed to comply with its duty of initial inquiry by not interviewing the maternal grandfather, maternal uncle, and the maternal grandmother's five brothers. The question we must answer is whether this failure should be considered harmless error. There are different approaches to assessing harmlessness in the ICWA context, and the issue is currently under review by our Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-782, review granted Sept. 21, 2022, S275578) [deficient

6

initial inquiry harmless unless record contains information suggesting a reason to believe that the child may be an "Indian child" within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding].) We apply the approach we described in *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 739: We will find prejudice when an agency "fail[s] to investigate readily obtainable information tending to shed meaningful light on whether a child is an Indian child." (*Ibid.*) "Under *Benjamin M.*'s prejudice analysis, we do not speculate about whether the extended family members might have information that suggests the child is an Indian child. [Citation.] We instead ask whether 'the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child.'" (*In re D.B.* (2022) 87 Cal.App.5th 239, 246-247.)

According to the agency, "any failure to inquire of [maternal and paternal extended] relatives is harmless error as there is no evidence in the record that an inquiry of [these] relatives would have given reason to believe [the child] is a Native American child." However, this argument ignores the possibility of an interview with an extended family member revealing such ancestry. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 ["parents may not know their possible relationship with or connection to an Indian tribe"]; *In re T.G.* (2020) 58 Cal.App.5th 275, 289, fn. omitted [imposition of duty to inquire broader than duty to provide ICWA notice "is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information

regarding their tribal status"].)  The extended family members who may reveal Indian ancestry include the maternal grandfather, maternal uncle, and the maternal grandmother's five brothers.  The agency's failure to interview them was prejudicial and reversible.  (*Ricky R*., *supra*, 82 Cal.App.5th at p. 680.)

## III.  DISPOSITION

The order terminating parental rights is conditionally reversed.  On remand, the juvenile court shall order the agency to make reasonable efforts to interview the maternal grandfather and available maternal family members about the child's Indian ancestry and to report to the court the results of the investigation.  Based on the information reported, if the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

The remittitur shall issue forthwith.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.

8